## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | **1:17cr101-HSO-JCG-1** |
| | § | **1:21cv53-HSO** |
| | § | |
| THARON JAMELL TAYLOR | § | |

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT THARON JAMELL TAYLOR'S MOTION [99] TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255

BEFORE THE COURT is the Motion [99] of Defendant Tharon Jamell Taylor to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255. After due consideration of the Motion, related pleadings, the record, and relevant legal authority, the Court is of the opinion that the Motion [99] and the files and records of the case conclusively show that Tharon Jamell Taylor is entitled to no relief and that his § 2255 Motion should be denied without an evidentiary hearing. *See* 28 U.S.C. § 2255(b).

## I.   FACTS AND PROCEDURAL HISTORY

On February 20, 2018, Defendant Tharon Jamell Taylor ("Defendant" or "Taylor") pled guilty to Count One of the Indictment in this case, which charged Taylor and his co-Defendant Deandrae Damonn Washington ("Washington") with conspiracy to possess with intent to distribute methamphetamine, "a Schedule II narcotic controlled substance," as prohibited by 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. *See* Indictment [10] at 1; Min. Entry, Feb. 20, 2018. The Court

sentenced Taylor to 295 months of imprisonment, followed by five years of supervised release.   *See* J. [56] at 2-3.

Taylor appealed pro se.   *See* Notice [60].   The United States Court of Appeals for the Fifth Circuit dismissed the appeal for want of prosecution, *see* Doc. [65] at 1, but later reinstated it and appointed appellate counsel, *see* Docs. [66], [67]. On appeal, Taylor challenged this Court's application of two sentencing enhancements under the United States Sentencing Guidelines ("U.S.S.G."), one at § 2D1.1(b)(1) for possession of a dangerous weapon, and the second at § 2D1.1(b)(5) for importation of methamphetamine.   The the Fifth Circuit found no error in their application and affirmed the Judgment.   *See* Op. [78].[1]

Taylor has now timely filed the present Motion [99] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. *See* Mot. [99].   He raises claims that he received effective assistance from his trial and appellate counsel, that his appeal waiver should not be enforced, and that the Court erred in applying the Sentencing Guidelines.   *See id.* at 4-8.   The Court entered an Order [101] requiring an affidavit from Taylor's former trial and appellate attorneys and an answer by the United States Attorney.   *See* Order [101] at 1-3.   Taylor's trial counsel, Harry B. Ward ("Ward"), and his appellate counsel, Peter Barrett ("Barrett"), have both filed Affidavits [102], [103] in Response.   The Government has filed a Response [105] in opposition to the Motion, and Taylor has

---

[1] Taylor filed a second appeal of the Court's December 2, 2020, Text Order that denied a request for extension of time for him to file a motion pursuant to 28 U.S.C. § 2255.   *See* Notice [96].   However, this appeal was dismissed for want of prosecution.   *See* Doc. [100]. Taylor nevertheless filed his current § 2255 Motion [99] within the one-year period of limitations.   *See* 28 U.S.C. § 2255(f).

filed a Reply [107].

## II.   DISCUSSION

### A.   Relevant legal standards

A prisoner may move to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255 on any one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack.   28 U.S.C. § 2255(a).   Upon a finding that any one of these four grounds for relief are present, a court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."   28 U.S.C. § 2255(b).   However, if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief," a court can deny the motion without a hearing.   *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).   "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing."   *Id.*

"[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal."   *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002).   To demonstrate ineffective assistance of counsel, Taylor must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial.   *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).   "Failure to establish either prong

defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997).

"For the deficiency prong, counsel's performance is to be accorded 'a heavy measure of deference.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). A court must assess reasonableness "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, 11 F.4th 364, 368-69 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 827 (2022) (quotation omitted). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; a defendant can overcome the presumption by demonstrating that "counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Id.* at 369.

To show the second prong of an ineffective assistance claim, prejudice, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Harrington v. Richter*, 562 U.S. 86, 111 (2011).

> This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case."

*Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. The Supreme Court has defined a reasonable probability as a "probability sufficient to

undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting

*Strickland*, 466 U.S. at 694).

B.     Ground One

In Ground One, Taylor asserts that he was deprived of constitutionally

effective assistance of trial counsel in the following respects:

A)     Counsel failed to conduct any meaningful pretrial investigation by which he would have discovered an alibi defense and corroborating witness.
B)     Counsel failed to move to suppress illegally obtained evidence.
C)     A breakdown in communication resulted in Petitioner having no meaningful legal representation.
D)     Counsel failed to protect Petitioner's rights at sentencing.
E)     Counsel failed to turn over Petitioner['s] case file so he could pursue his § 2255 motion for ineffective assistance of counsel.

Mot. [99] at 4.

1.     Pretrial investigation

In response to this claim, Ward details in his Affidavit [103] the steps he took

to obtain discovery, review it with Taylor, and meet with investigators.   *See* Ward

Aff. [103] at 1-3.   Ward also states that Taylor had no known alibi defense.   *See id.*

at 3.   The Government responds that "Taylor fails to provide any information,

much less anything with specificity, outlining what an investigation would have

exposed."   Resp. [105] at 7.

An attorney has "a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary."   *United*

*States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (quoting *Strickland*, 466 U.S. at

691).   Where a defendant alleges a failure to investigate on the part of his counsel,

he "must allege with specificity what the investigation would have revealed and

how it would have altered the outcome of the trial." *Id.*

In this case, the transcripts of Taylor's change of plea and sentencing hearings reveal that Ward was very familiar with Taylor's case and understood it in detail.   *See* Tr. [72]; Tr. [75].   Taylor offers the conclusory assertion that, with additional investigation, Ward would have discovered an alibi defense and a corroborating witness, *see* Mot. [99] at 4, but he has not articulated any specifics of what such an investigation would have revealed, *see Green*, 882 F.2d at 1003, such as what facts or witnesses would have supported his alibi defense.   Taylor merely relies upon a vague assertion of an "alibi defense" and some unknown "corroborating witness," Mot. [99] at 4, which is insufficient given that an alibi would have been particularly within Taylor's knowledge.   In contrast, Ward has presented competent evidence that Taylor had no such defense.   *See* Ward Aff. [103] at 3.

Taylor testified under oath at the change of plea hearing that he was pleading guilty of his own free will because he was in fact guilty, *see* Tr. [72] at 12, and "[s]olemn declarations in open court carry a strong presumption of verity," *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).   Moreover, a voluntary guilty plea waives all claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea, including ineffective assistance of counsel claims, "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."   *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (quotation omitted).

Taylor essentially contradicts his own sworn statements at the guilty plea hearing, which is insufficient to obtain collateral relief, and he has made no allegation that his plea was involuntary or otherwise defective.   *See id.*; *see also Reed*, 719 F.3d at 373 (recognizing that "when a defendant's allegations contradict his sworn testimony given at a plea hearing, we have required more than mere contradiction of his statements, typically specific factual allegations supported by the affidavit of a reliable third person") (quotation omitted).   Taylor is entitled to no relief on this Ground.   *See Palacios*, 928 F.3d at 455; *Reed*, 719 F.3d at 373.

2.   Motion to suppress

To the extent Taylor contends that Ward rendered ineffective assistance by failing to file a motion to suppress illegally obtained evidence, *see* Mot. [99] at 4, Ward avers that he filed "all appropriate motions in this matter," Aff. Ward [103] at 3.   The Government responds that "Taylor does not provide any detail concerning his allegation as to why the evidence was illegally obtained," and that "Ward cannot be faulted for not filing a frivolous motion."   Resp. [105] at 7.

To demonstrate deficient performance under *Strickland*, Taylor "must at a minimum show that the evidence would have been suppressed if objected to." *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017).   "[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986),

It is impossible to ascertain from Taylor's Motion [99] what evidence he believes should have been suppressed or how it was allegedly illegally obtained. *See* Mot. [99].   Nor does Taylor address this argument in his Reply [107].

7

In addition, Taylor's voluntary guilty plea waived this claim because it occurred prior to entry of his plea, and he does not allege that Ward's ineffectiveness in this regard rendered his guilty plea involuntary. *See Palacios*, 928 F.3d at 455. Taylor offers only a conclusory allegation that Ward failed to file a motion to suppress some unidentified, illegally obtained evidence. Ward was not required to file a frivolous objection or motion. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000); *see also, e.g., Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

Moreover, even if Ward's performance on this point were somehow deficient, nothing in Taylor's Motion [99] could be construed as even explaining how he was prejudiced. *See* Mot. [99] at 4. "Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of [his] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Taylor has not attempted to identify what evidence would be in question and how it was allegedly obtained in violation of his constitutional rights. *See id.* On the record here, the Court finds that the Motion [99] and record conclusively show that this claim lacks merit.

3.   Breakdown in communication

Taylor contends that a breakdown in communication resulted in him having no meaningful legal representation. *See* Mot. [99] at 4. However, Ward states

8

that "there was no breakdown in communications with Defendant and that counsel and Defendant met on numerous occasions," Aff. Ward [103] at 3, and the Government responds that "[t]here is nothing to suggest in the record that such a breakdown occurred," Resp. [105] at 7.

There is no indication in the record that any breakdown in communication occurred between Ward and Taylor, other than Taylor's conclusory statement in his Motion, nor does Taylor even allege when this breakdown purportedly occurred. *See* Mot. [99] at 4.   To the extent it occurred prior to the guilty plea, this claim is waived, as Taylor does not assert that Ward's ineffectiveness rendered his guilty plea involuntary.   *See Palacios*, 928 F.3d at 455.

This is not a situation where counsel failed to communicate a plea offer and the defendant lost the opportunity to plead to a less serious charge or receive a lesser sentence.   *See, e.g., United States v. Draper*, 882 F.3d 210, 216 (5th Cir. 2018).   Taylor makes no such claim here, and at the change of plea hearing, the Assistant United States Attorney and Ward agreed that the Plea Agreement under which Taylor pled was the only formal plea offer exchanged.   *See* Tr. [72] at 12.

Every indication in the record is that Taylor and Ward continued to communicate throughout Ward's representation in this Court.   For example, during the change of plea hearing, Taylor testified under oath that he had an opportunity to review the Indictment with Ward, fully discuss the charges with Ward, and ask him any questions he had about the charges.   *See* Tr. [72] at 6. Taylor discussed with Ward any possible defenses he had and possible witnesses he could call, and was able to ask Ward any questions he had about those subjects. *See*

9

*id.* at 7.   Taylor also agreed under oath that Ward had reviewed and discussed with him the evidence that the Government intended to produce at trial to support the charges against him, and that Taylor was able to ask Ward any questions he had about that.   *See id.* at 7-8.   Taylor acknowledged that he was fully satisfied with the counsel, representation, and advice given to him in this case by Ward, and that he had no complaints or objections whatsoever regarding the services provided by Ward.   *See id.*   Finally, at the sentencing hearing, Ward stated that he had reviewed the presentence investigation report ("PSR") with Taylor, explained it to him, and answered any questions he had about it.   Tr. [75] at 3.

Even if this Ground were not waived, Taylor's Motion [99] contains only a vague and conclusory assertion of a breakdown in communication, but offers no specifics, and there is simply no indication in the record of any such breakdown. Nor has Taylor explained what prejudice he may have suffered as a result, as there is no assertion or evidence that the outcome here would have been any different. *See Harrington*, 562 U.S. at 111.   Taylor is not entitled to relief on this basis.

4.   <u>Protection of Taylor's rights at sentencing</u>

Taylor vaguely states in his Motion [99] that his attorney "failed to protect [his] rights at sentencing," Mot. [99] at 4, but it is unclear to what this refers, *see id.* In an unsworn reply, Taylor purports to delineate how his rights at sentencing were prejudiced.   *See* Reply [107].   He argues that his attorney was ineffective in failing to rebut the Government's presumption that an unloaded firearm in his apartment was in close proximity to drug paraphernalia, resulting in a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) and prejudicing Taylor with a lengthier sentence.   *See*

10

*id.* at 2-6.    Taylor also asserts that his counsel was ineffective at sentencing in failing to argue that there was insufficient evidence to assess a two-level enhancement for importation of methamphetamine under U.S.S.G. § 2D1.1(b)(5) and that Taylor should have received a two-level decrease under U.S.S.G. § 3B1.2 as a minimal or minor participant in the offense.    *See id.* at 7-10.    Taylor claims that some of his "co-defendants"[2] received "leadership" role enhancements, meaning "through logical extension that the petitioner was not a leader, but a minimal role player." *Id.* at 10.    Thus, Taylor asks the Court to resentence him without these enhancements, yielding a Guidelines range of 135 to 168 months imprisonment. *See id.* at 11-12.    In response to these allegations, Ward states in his Affidavit [103] that he "formally objected to all enhancements to the sentencing guidelines and fought to protect Defendant's rights in sentencing."    Aff. Ward [103] at 3.

Because Taylor made only a vague, conclusory statement in his original Motion that his attorney "failed to protect [his] rights at sentencing," Mot. [99] at 4, the Government was unable to substantively respond to this argument, *see* Resp. [105] at 8.    Taylor's Reply [107], which details many alleged errors by counsel not included in his original Motion, constitutes an untimely amendment to the Motion under 28 U.S.C. § 2255(f)(1), which Taylor has not shown relates back under Federal Rule of Civil Procedure 15(c).    *See, e.g., United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009).    This claim should be denied on that basis alone. However, even it were timely, the result would not change.    Taylor's Motion [99]

---

[2] Taylor uses the plural co-Defendants, but the only co-Defendant in this case was Washington.

and the record conclusively show that he is entitled to no relief on this Ground.

a.    Firearm enhancement under U.S.S.G. § 2D1.1(b)(1)

Taylor's base offense level under the Guidelines was increased by two levels because a firearm was possessed.   *See* PSR [53] at 9 (filed under seal) (citing U.S.S.G. § 2D1.1(b)(1)).   For U.S.S.G. § 2D1.1(b)(1) to apply, "[t]he Government has the burden of demonstrating by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."   *United States v. Juluke*, 426 F.3d 323, 328 (5th Cir. 2005) (quotation omitted).   To satisfy this burden, the Government "must show that the weapon was found in the same location where the drugs or drug paraphernalia were stored or where part of the transaction occurred."   *Id.* (quotation omitted).   The Fifth Circuit has held that the "adjustment should be applied if the weapon was present, unless the defendant establishes that it was clearly improbable that the weapon was connected with the offense."   *Id.* (quotation omitted).

The PSR recounted that "[a] firearm was located in Taylor's apartment where the defendant had also secreted paraphernalia related to drug trafficking."   PSR [53] at 9 (filed under seal).   Ward objected to this enhancement and argued at sentencing that it should not apply, *see* Obj. [53-2] at 3 (filed under seal); Tr. [75] at 3, 14-15, but after hearing the testimony of the case agent, the Court overruled the objection, *see id.* at 21-22.   On direct appeal, Taylor challenged this enhancement, but the Fifth Circuit found no clear error and affirmed.   *See* Op. [78].

Taylor first argues that the Government failed to meet its initial burden to show that the firearm was in close proximity to the drugs.   *See* Reply [1-7] at 4-5.

12

This is not an allegation that Taylor's attorney was ineffective, but instead goes to the sufficiency of the Government's proof on this issue.   *See id.*   Taylor raised this issue on appeal, and the Fifth Circuit affirmed.   *See* Op. [78].   Taylor's attempt to argue that the Government did not meet its burden here is thus an improper attempt to collaterally attack the Court's ruling.

Taylor also asserts that his attorney was ineffective in failing to rebut the presumption that the firearm was connected to the offense.   *See* Reply [107] at 5. In support of this contention, Taylor maintains that the unloaded firearm was discovered in the bedroom, while the paraphernalia was located in the kitchen. *See id.* at 6.   Taylor therefore draws the conclusion that Ward "was clearly unreasonable in failing to rebut the Government's presumption that the firearm was in close proximity and therefore warranting a two level enhancement."   *Id.* Again, Taylor's conclusory assertions do not attempt to explain how counsel could have established that it was clearly improbable that the weapon was connected with the offense.   *See Juluke*, 426 F.3d at 328.

The facts upon which Taylor now relies to argue that his counsel was ineffective were before the Court at sentencing.   Consistent with Taylor's factual statements his Reply, the case agent testified at the sentencing hearing that the gun was found in the bedroom of the apartment, while the paraphernalia was in the kitchen.   *See* Tr. [75] at 6-8; *see also* PSR [53] at 6-7 (filed under seal).   Any reiteration of these facts by Taylor's counsel at the sentencing hearing would not have changed the result.   Despite these facts, which were known to the Court at sentencing, it overruled Taylor's objection and the Fifth Circuit affirmed.   As such,

Taylor cannot show any prejudice in support of an ineffective assistance of counsel claim for failing to call these facts to the Court's attention. *See Strickland*, 466 U.S. at 687-88.   No relief is warranted on this Ground.[3]

b.   Importation of methamphetamine enhancement under U.S.S.G. § 2D1.1(b)(5)

Two levels were added to Taylor's base offense level because "the offense involved the importation of methamphetamine."   *See* PSR [53] at 9 (filed under seal) (citing U.S.S.G. § 2D1.1(b)(5)).   Ward submitted an objection and argued that this increase should not apply because "there is no evidence as to the importation of methamphetamine."   Obj. [53-2] at 5 (filed under seal); *see also* Tr. [75] at 3.   At sentencing, Ward argued against the increase for importation, specifically regarding the purity of the methamphetamine and whether the purity level necessarily meant the drugs were imported from Mexico.   *See id.* at 16.   The Court overruled this objection, noting both the purity of the methamphetamine, the proffer of a co-Defendant who acquired the drugs in close proximity to Mexico, and the belief of both the agent and the co-Defendant that the methamphetamine did in fact come from Mexico.   *See id.* at 22-23.   Taylor challenged this enhancement on direct appeal, but the Fifth Circuit affirmed.   *See* Op. [78].

Taylor argues that his counsel did not challenge the statement by the case agent that "there are no known labs that can produce such purity in the United

---

[3] While it is unclear if the record at sentencing included the fact that the firearm was unloaded, as Taylor now claims in his unsworn Reply [107], that would not have changed the result.   "Section 2D1.1(b)(1) is an added punishment for drug offenders who heighten the danger of drug trafficking by possessing a dangerous weapon," and "[t]he mere presence of gun, loaded or not, can escalate the danger."   *United States v. Mitchell*, 31 F.3d 271, 278 (5th Cir. 1994).   Taylor cannot demonstrate prejudice on this point.   *See id.*; *see also Strickland*, 466 U.S. at 687-88.

States," which was insufficient to apply the enhancement without more evidence of importation.   Reply [107] at 8-9.   Ward did make this argument in his written objection and raised it again at sentencing.   *See* Obj. [53-2] at 3-4 (filed under seal); Tr. [75] at 3.   Ward maintained that there was no proof that the methamphetamine was imported, and that the application of the enhancement was only based upon "conjecture" due to its high purity level.   *See* Obj. [53-2] at 4.   The Court rejected this argument and overruled Taylor's objection, and the Fifth Circuit affirmed.   *See* Op. [78].

Taylor overlooks the fact that the Court did not rely solely upon the purity level in overruling his objection.   *See* Tr. [75] at 22-23.   The Court found that the purity would be sufficient evidence to support the importation enhancement, but it also noted the significance of the proffer of Taylor's co-Defendant who acquired the drugs in close proximity to Mexico and the belief of both the agent and the co-Defendant that the methamphetamine did in fact come from Mexico.   *See* Tr. [75] at 22-23.   Considering all of the evidence before the Court, it determined that the enhancement for importation under § 2D1.1(b)(5) was correctly applied.   *See id.* at 23.

In sum, Taylor's argument that his attorney was ineffective for failing to raise an argument that he in fact raised, and which the Court rejected, cannot support an ineffective assistance claim.   Nor can Taylor show any prejudice in this regard.   *See Strickland*, 466 U.S. at 687-88.

c.    Failure to receive a role reduction under U.S.S.G. § 3B1.2

Taylor asserts that his counsel "failed to argue for a mitigating adjustment"

15

when "U.S.S.G. § 3B1.2 provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." Reply [107] at 9. Taylor faults his counsel for not arguing he played a minor role and deserved a two-level reduction in his offense level. *See id.* at 9-10. He states that "[t]he DEA never discovered any drugs with [him]," and that the fact that the firearm at the apartment was unloaded and in a separate room from the paraphernalia shows a lack of drug activity because it demonstrates he felt "comfortable leaving the firearm in a completely different room . . . unloaded." *Id.* at 10. Taylor also cites the application of leadership enhancements for his "co-defendants" to argue that "through logical extention [sic] [he] was not a leader, but a minimal role player." *Id.*

To the extent Taylor argues that he was not involved in drug activity, he pled guilty to and stands convicted of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, as charged in Count 1 of the Indictment [10]. This argument constitutes an improper attempt to collaterally attack his conviction. Taylor agreed under oath with the Government's factual basis at the change of plea hearing and pled guilty to the charge of his own free will because he was in fact guilty. *See id.* at 12, 30-31. "Solemn declarations in open court carry a strong presumption of verity," *Wilkes*, 20 F.3d at 653 (quoting *Blackledge*, 431 U.S. at 73-74), and Taylor is not entitled to any relief on this basis.

Taylor's allegation of ineffective assistance concerning a role reduction is also without merit. Under § 3B1.2, "[i]f the defendant was a minor participant in any criminal activity," a court decreases the offense level by two levels, and if a

16

"minimal role participant," a court decreases it by four.   U.S.S.G. § 3B1.2. According to the application notes, "[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 appl. n. 3(A).   The minimal role reduction "applies to a defendant described in Application Note 3(A) who plays a minimal role in the criminal activity."   U.S.S.G. § 3B1.2 appl. n.4.   This reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group."   *Id.*   Under § 3B1.2, "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."   *Id.*   The minor participation reduction "applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."   U.S.S.G. § 3B1.2 appl. n. 5.

The Fifth Circuit has stated that there is not "an affirmative right to a § 3B1.2 reduction to every actor *but* the criminal mastermind," *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016) (emphasis in original), and Taylor has not identified the individuals who allegedly received a leadership enhancement, *see* Reply [107] at 10.   He only had one co-Defendant in this case, Washington, who did not receive any type of adjustment for his role in the offense.   *See* Washington's PSR [51] at 8 (filed under seal).

A defendant bears the burden of proof under § 3B1.2, *see id.*, and must demonstrate by a preponderance of the evidence: "(1) the culpability of the average

participant in the criminal activity; and (2) that [he] was substantially less culpable than that participant." *Castro*, 843 F.3d at 613 (footnote omitted).   According to the Fifth Circuit, "it is improper for a court to award a § 3B1.2 adjustment simply because a defendant does less than the other participants: the defendant must do enough less so that [he] at best was peripheral to the advancement of the illicit activity."   *Id.* at 613-14 (quotation omitted).

In this case, Washington transported methamphetamine from Texas to Taylor (also known as "Nephew") in Mississippi on approximately seven occasions. *See* PSR [53] at 5-6 (filed under seal); Tr. [72] at 28-30.   There is nothing in the record, and Taylor has not made any factual allegation, to support the conclusion that Taylor was any less culpable than Washington.   Even if a reasonable person could find that Taylor played a lesser role in the offense than Washington, Taylor was certainly not "enough less" culpable that he was "peripheral to the advancement of the illicit activity." *Castro*, 843 F.3d at 613-14.   Instead, the evidence reflects that Taylor was at least an equal participant in the drug activity. At his change of plea Taylor agreed under oath with the Government's factual basis, including that he and Washington conspired with intent to distribute methamphetamine, that Washington delivered the drugs to Taylor on multiple occasions, and that inside Taylor's apartment agents located a set of scales, more narcotics, and a stolen handgun.   *See* Tr. [72] at 28-30.

Any objection to the PSR requesting a minor role reduction under § 3B1.2 would have been patently frivolous and futile, and counsel is not ineffective for failing to raise a frivolous objection.   *See, e.g., Preston*, 209 F.3d at 785.   Taylor's

conclusory assertion that he should have received a minor or minimal role reduction is not enough to show ineffective assistance or prejudice.   *See Strickland,* 466 U.S. at 687-88.   Taylor did not qualify for a minimal or minor role adjustment under § 3B1.2, and he is entitled to no relief on this Ground.

5.   <u>Taylor's case file</u>

Taylor makes the conclusory allegation that "counsel failed to turn over [his] case file so he could pursue his § 2255 motion for ineffective assistance of counsel," Mot. [99] at 5, but he does not state that he actually sought the case file from trial counsel or counsel's former firm, *see id.*[4]   Ward avers that he is at a different law firm now and has no knowledge whether Taylor made such a request, but that, in his experience, his former firm "has always made copies of files, at no charge, for clients upon request."   Ward Aff. [103] at 3.   Taylor cannot show that Ward's performance fell below an objective level of reasonableness in this regard.   *See Strickland,* 466 U.S. at 687-88.

Moreover, Taylor does not explain what part of the record he lacks, nor does he state specifically what information from the case file he needed to prepare his § 2255 Motion.   Taylor has pursued ineffective assistance of counsel claims in his Motion [99] in this case, and he has not set forth or attempted to describe what additional grounds for review he could have presented if he had a copy of the case file. Nor has Taylor shown how the result here would have changed had he received

---

[4] Taylor also has not sought discovery of the case file before this Court, nor would the Court find such discovery warranted on the basis of Taylor's conclusional allegations.   *See, e.g., United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004).

19

the case file.   As the Government points out, "Taylor has not made the requisite showing that but for Ward not turning over the case file, 'the result would have been different.'"   Resp. [105] at 8 (quoting *Strickland*, 466 U.S. at 694).   Taylor is not entitled to any relief on this conclusory claim.

C.   <u>Ground Two</u>

In Ground Two, Taylor claims that his appellate counsel failed to raise on direct appeal the issue of the Court failing to appoint adequate representation, including investigators.   *See* Mot. [99] at 6.   He states that:

A)   Counsel would have discovered an [sic] plausible defense
B)   Counsel would have discovered that the Petitioner['s] sentence for the unlawful drugs was an illegal conviction/sentence;
C)   Counsel failed to follow up on lab report of the paraphernalia was not unlawful drug;
D)   Counsel would have discovered that the methamphetamine that the Petitioner['s] co-defendant was arrested for was not imported from Mexico, when it's clearly [sic] that 100% methamphetamine [is] made in the United States.

*Id.*

Appellate counsel, Barrett, avers under oath that upon being appointed to represent Taylor on appeal, he reviewed the record, researched the relevant issues, and "briefed only the issues that were meritorious and arguable under the law and supported in the record."   Barrett Aff. [102] at 23.   The Government responds that "the Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit."   Resp. [105] at 9 (citing *Evitt v. Lucey*, 469 U.S. 387 (1985)).

Initially, the Court notes Taylor was represented by retained counsel in this Court, not appointed counsel.   Thus, his allegation concerning the Court's failure to

appoint counsel is unavailing.   As for the failure to appoint an investigator, under

Chapter 3, § 310.10.10, of the Guide to Judiciary Policy, "[i]nvestigative . . . services

necessary to adequate representation . . . are available to persons who are eligible

under the [Criminal Justice Act, 18 U.S.C. § 3006A], including persons who have

retained counsel but who are found by the court to be financially unable to obtain

the necessary services."   Guide to Judiciary Policy § 310.10.10.   However, Taylor

never sought the appointment of an investigator in his case, nor has he articulated

how an investigator might have altered the outcome.   The Court next turns to each

of Taylor's individual allegations concerning Barrett's representation on appeal.

1.   Plausible defense

Taylor appears to assert that Barrett failed to raise that Ward, either himself

or through an investigator, failed to establish a plausible defense to Taylor's crime.

*See* Mot. [99] at 6.   However, as the Court has already discussed, Taylor pled guilty

and admitted under oath that he was in fact guilty of the crime charged, which

waived his ineffective assistance of counsel claims "except insofar as the

ineffectiveness is alleged to have rendered the guilty plea involuntary."   *Palacios*,

928 F.3d at 455.   There is no allegation of an involuntary plea, and Taylor's

appellate counsel cannot be ineffective for failing to raise a frivolous issue on

appeal.   *See United States v. Merritt*, 24 F.3d 240, 1994 WL 242561, *3 (5th Cir.

May 24, 1994) (when a defendant's argument is frivolous, "his attorney's failure to

raise it on appeal does not amount to ineffective assistance of counsel"); *see also,

e.g., Preston*, 209 F.3d at 785.   Taylor is not entitled to any relief on this Ground.

2.   Illegal conviction/sentence

According to Taylor, Barrett should have argued that trial counsel was ineffective because he should have discovered that his "sentence for the unlawful drugs was an illegal conviction/sentence."   Mot. [99] at 6.   Again, Taylor pled guilty and has not asserted that his plea was involuntary, and thus he is not entitled to any relief on this Ground.   *See Palacios*, 928 F.3d at 455.

With respect to any claim of an illegal sentence, there is no indication that Taylor's sentence was in any way illegal.   He does not allege a sentence in excess of the statutory maximum or any other grounds under which one could argue the Court imposed an "illegal" sentence.   The conspiracy charge to which Taylor pled guilty in Count 1 of the Indictment carried a penalty of not less than 10 years or more than life imprisonment, *see* 21 U.S.C. §§ 841(b)(1) and 846, and the sentence imposed fell within this statutory range, *see* J. [56].

Taylor's conclusory assertions, unsubstantiated by evidence, do not support a request for an evidentiary hearing.   *See Reed*, 719 F.3d at 373.   Any argument by Ward in this Court that Taylor's sentence was illegal would have been frivolous and futile, as would Barrett's assertion on appeal that Ward provided ineffective assistance in this respect.   *See, e.g., Preston*, 209 F.3d at 785; *Merritt*, 1994 WL 242561, at *3.[5]

---

[5] Barrett also represented that he did not raise any ineffective assistance claims on appeal because the record "did not contain any evidence to sustain an ineffective assistance claim on direct appeal or any evidence that Mr. Taylor was prejudiced by his attorney's substandard performance."   Barrett Aff. [102] at 3.   Taylor has not attempted to rebut Barrett's Affidavit [102] on this point.

3.   Lab report concerning the drug paraphernalia

Taylor argues that Barrett should have raised on appeal an ineffective assistance of counsel claim that Ward "failed to follow up on lab report of the paraphernalia was not unlawful drug."   Mot. [99] at 6.   This contention appears to relate back to Taylor's argument concerning the proximity of the firearm to the drug paraphernalia, which resulted in a two-level enhancement under U.S.S.G. § 2D1.1(b)(1).[6]

Any ineffective assistance claim on this ground should be summarily dismissed for the same reasons stated earlier in the discussion of the enhancement under § 2D1.1(b)(1).     As the Court has stated, all of the pertinent facts upon which Taylor now relies were before the Court when it overruled his objection. Moreover, Barrett has averred that he did not raise any ineffective assistance claims on appeal because the record "did not contain any evidence to sustain an ineffective assistance claim on direct appeal or any evidence that Mr. Taylor was prejudiced by his attorney's substandard performance."   Barrett Aff. [102] at 3. Taylor has not offered any evidence or argument to contradict these statements, and Taylor is not entitled to any relief on this Ground.

---

[6] On direct appeal, Barrett did argue that the Government did not meet its burden to show by a preponderance of the evidence that there was a relationship between the weapon, the drug trafficking activity, and Taylor, but he did not argue ineffective assistance of counsel. *See* Op. [78] at 1-2; *United States v. Taylor*, No. 18-60493, Appellant Br. at 21-22 (5th Cir. Feb. 25, 2019).   The Fifth Circuit stated that the evidence showed that, at the time of the controlled delivery of methamphetamine to Taylor in the parking lot of his apartment, "law enforcement officers found a set of scales, methamphetamine residue, and cutting agents in his kitchen; and that officers found Taylor's firearm on the bed in one of the bedrooms." Op. [78] at 2.   The Fifth Circuit held that the Court did not clearly error in applying the enhancement under § 2D1.1(b)(1).   *Id.*

23

To the extent Taylor may be arguing that a follow up by Ward on the lab report would have shown that Taylor was not involved in drug activity as charged in Count 1 of the Indictment [10], this is an improper attempt to collaterally attack of his conviction.   Taylor agreed under oath with the Government's factual basis during the change of plea hearing and pled guilty to the charge of his own free will because he was in fact guilty.   *See* Tr. [72] at 12, 30-31.   Moreover, there was additional evidence connecting Taylor to the drug trafficking crime, including his co-Defendant's proffer and the controlled buy.   *See, e.g.,* Tr. [72] at 28-30; PSR [53] at 5-7 (filed under seal).   Any argument by appellate counsel that trial counsel was ineffective in failing to raise this ground at sentencing would have been frivolous and futile.   Taylor is not entitled to any relief on this basis.

4.   Importation

Taylor faults Barrett for not raising on appeal an ineffective assistance claim that Ward should have discovered that the methamphetamine was not imported from Mexico because 100% pure methamphetamine can be "made in the United States."   Mot. [99] at 6.[7]   Taylor once again fails to address or attempt to rebut the additional evidence that the Court had before it that linked the methamphetamine to Mexico.   *See id.*; Tr. [75] at 22-23.   This additional evidence supported the Court's conclusion that the importation enhancement was properly applied, and

---

[7] On direct appeal, Barrett argued that the Government did not meet its burden of showing that the methamphetamine was imported, but he did not advance an ineffective assistance of counsel claim in this regard.   *See* Op. [78] at 1-3; *United States v. Taylor*, No. 18-60493, Appellant Br. at 18-20 (5th Cir. Feb. 25, 2019).   The Fifth Circuit determined that "[t]here was evidence supporting a conclusion that the methamphetamine came from Mexico," and that this Court did not clearly err by applying the enhancement.

24

Barrett was not required to raise a frivolous ground on appeal.   *See, e.g., Preston*, 209 F.3d at 785; *Merritt*, 1994 WL 242561, at *3.

Even if not frivolous, "[t]he Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).   Instead, it might be a reasonable tactic to concentrate on the strongest points of error on appeal.   *See id.*   According to Barrett,

> [d]uring review of the record on appeal, and in deciding if there were meritorious issues to present to the Fifth Circuit, I concluded that the record did not contain any evidence to sustain an ineffective assistance claim on direct appeal or any evidence that Mr. Taylor was prejudiced by his attorney's substandard performance.

Barrett Aff. [102] at 3.   Taylor has not presented any evidence or argument to the contrary.   He is not entitled to any relief on this Ground.

D.   <u>Ground Three</u>

Taylor asserts in Ground Three that "[t]he appeal waiver should not be enforced."   Mot. [99] at 7.   Because the Government did not attempt to enforce the appeal waiver on Taylor's direct appeal and states in its Response that it "does not seek to enforce Taylor's agreement," this issue is without merit.   Resp. [105] at 2 n.1.

E.   <u>Ground Four</u>

In Ground Four, Taylor argues that this Court "erred in applying enhancement penalty for 2D1.1(b)(5), 2D1.1(b)(1), and 'Relevant Conduct' violative under U.S.S.G. § 6A1.3(a)." *Id.* at 8.   According to Taylor, his

> [c]ounsel's failure to provide corroborating and mitigating evidence at

25

sentence [sic] was the reason the Defendant suffered a harsh sentence/conviction.    Had trial/sentence counsel hired a private investigator for defendant's [sic] he would have discovered corroborating and mitigating evidence that would have substantially lowered the Defendant['s] sentence.

*Id.*

Taylor offers nothing more than conclusory allegations, unsubstantiated by evidence, that Ward could have provided corroborating and mitigating evidence himself or through an investigator, nor does he specify what type of purportedly "corroborating and mitigating evidence" could have been available at sentencing. *See id.*   This is not sufficient to support a request for an evidentiary hearing.   *See Reed*, 719 F.3d at 373.

To the extent Taylor argues that the Court erred in applying the two sentencing enhancements under U.S.S.G. § 2D1.1(b)(1) and (b)(5), this is an improper attempt to collaterally attack the Court's sentence, which has already been affirmed on direct appeal.   *See* Op. [78].   Taylor also argues that the Court found "relevant conduct" in violation of U.S.S.G. § 6A1.3(a), but this claim also could have been raised on direct appeal and was not.   Nor can Taylor demonstrate prejudice related to this Guidelines provision.   While it is unclear what Taylor is asserting with this conclusory allegation, § 6A1.3(a) concerns the resolution of disputed factors at sentencing, which the Court did at Taylor's sentencing hearing. *See* U.S.S.G. § 6A1.3(a).   The Court also properly considered relevant conduct, to the extent permitted under the Guidelines, in formulating Taylor's sentence.   *See, e.g.,* U.S.S.G. § 1B1.3.   This claim is simply without merit.

III.   <u>CONCLUSION</u>

Because the Motion, files, and records conclusively show that Taylor is entitled to no relief, the Court finds that Taylor's Motion [99] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Tharon Jamell Taylor's Motion [99] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of April, 2022.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE